I'm Jordan Johnson, honored to represent Appellant Benarvis Johnson, 31-year-old Doreen Van Vetten, who was requested to be at Clayton County Courthouse on December 7, 2016, regarding a follow-up meeting in reference to an organized child support order. While seated in the courtroom, waiting to be called, he was using his tablet computer on silent mode. He was approached in the courtroom, and he was in the courtroom, and the defendant, Lewis, approached him and requested him to step outside to pick up his tab. He stepped outside, requested to pick up his tab, and did not use his tablet. My client took off his tab, went back to court, and again, no judge on the bench, and no proceedings in progress. He continued using his tablet computer. Though he had been told not to. Yes, he had been told not to use his tablet computer in the courtroom. He then proceeded to use it, no judge on the bench, and he believed that it was not illegal to use a tablet in a courtroom. He proceeded to use the tablet in this courtroom. In this courtroom, so your Honor's understand, the- I don't want to interrupt you, but what type of court was it? Was it a juvenile court? And this is under the record. It was a courtroom in Clayton County Courthouse. There was no proceedings going on. My understanding, and my understanding of the record, is that he was being used as sort of a waiting area to go and meet with somebody. Unlike here, where your Honor is on the bench, there, they were just sitting there waiting. There was nothing going on. But aren't courts allowed to set rules for courthouse decorum, even when court is not officially in session? Well, I mean, from my understanding of the practice of the law, I mean, there are sometimes signs posted, but I believe in order to arrest someone or to, you know, incarcerate somebody, it has to be a violation of a publicly stated court order. And according to the record, defendant Goodson testified that it was up to the individual judge whether or not a, you know, what the legalized policy was in the court order. Let me ask you this question. The district court held that it was an unlawful arrest because the signs didn't say the source of the authority to prohibit electronic devices in the courtroom. It seems to me that that is wrong. It seems to me that it doesn't really matter whether the signs were actually authorized. The issue for probable cause is whether or not a reasonable officer in those circumstances would have believed that the signs were authorized, and therefore violations would be probable cause to arrest. And it seems to me that the mere presence of those signs gives that officer ample reasonable belief that the signs were authorized. Now, it is true, Mr. Goodson, Sheriff Deputy Goodson testified that not all the judges enforced that, but that doesn't mean it wasn't a rule. It seems to me the district court was wrong, and he affirmed for different reasons, but it seems like to me we should affirm because it was reasonable for the officer to believe that the signs were authorized, and therefore there was probable cause. What's wrong with that? Well, Your Honor, I think that that creates a due process issue and a concerning, I guess, delegation of obedience to just any sign that may exist. I mean, I know that in other times, like oftentimes toward parking, you have a sign that is saying that we are liable to something that happens. You're in a courthouse in a courtroom, and there's signs, not just one, but multiple signs. Why wouldn't an ordinary person think that that was authorized? Who would put up an unauthorized sign? And with judges and prosecutors walking around all the time, an unauthorized sign wouldn't stay up long, would it? Well, Your Honor, just because a sign exists in a courtroom, we would contend that that does not create law. Just as if a sign says that you are not allowed to speak, if a sign says that you can go back and screen, you have a situation where certain races are discriminated against in courthouses. Just because a sign says something does not mean that it's off the order of the court or that it's a published law or policy anywhere. Do you think that courts are obligated to officially promulgate and publish any rule in order for parties in court to be called to follow that rule? Your Honor, I believe that that would be a necessary part of due process, that anybody in public would need to know where the authority comes from. And I mean, the officers in this case, the defendants, are doing their job. It's a pretty safe assumption if there are signs around the courthouse that that's a court rule, right? I mean, I would not know. I mean, I personally, Your Honor, I don't know what an unauthorized sign means. Because oftentimes I see signs that say no tablets. All right, wait a minute. The due process concern would be a concern about fair notice of what the prohibition is. There's no question here about that. The only complaint, your argument is that unless you know the source of the prohibition, the authority for that prohibition, that there's a due process concern, notwithstanding the fact this is a courthouse, it's public property. The officials of the court therefore control it and would have been responsible for the posting of any signs. The authority comes from the very fact that they're placed in the courthouse itself, doesn't it? Well, Your Honor, the issue in this specific case is that there was no policy. There seems to be no authority in the record that shows that that was the case. There's testimony, isn't there, that Lewis specifically testified one of the procedures and protocols associated with that courthouse was the policy that no electronic devices, including tablets, are permitted to be used in the courtroom. There's testimony about that. Yes, Your Honor, defendant Lewis stated that. Defendant Goodson stated that it's up to each individual judge. I would know that from my personal experience with courtrooms or courthouses that, for example, Your Honors could order me to do something. If I disobey, I could be taken into custody. If I disobey the standing rules that this court has, I could be held in contempt and taken into custody. But ultimately, if someone is not violating those rules, if they're just around the building, and an officer tells them to do something, and it's not in the court order, It's totally consistent with all the signs that are posted around the courthouse, right? I mean, what that officer said to your client was in total conformance with all those signs, wasn't it? Your Honor, yes. What the officer said regarding no electronic devices was in accordance with that. If you assume that that was a universal prohibition, his attorney— Well, even if you assume it's a prohibition that depends on the context of each specific judge, when the officer approaches your client and says, Not in this courtroom. That's enough, isn't it? I do not believe so, Your Honor, because the attorney in that courtroom would not have likely been approached by the officers. And that's also a direct testimony. I mean, there seems to be a situation where it was not being applied informally. Attorneys in the courthouse were able to use tablets. That's what I believe the defendant— That's not the basis of the district court's ruling or your argument, as I understood it. You didn't make an argument of equal protection or something like that? No, Your Honor. The way I'm looking at this is from a holistic viewpoint in response to the court's question. If the idea is that a sign creates law, even if it's not promulgated through a specific court order or the legislature, then no citizen would have an obligation to comply with something that is not legally created through the legislature. I mean, my understanding is that's a basic part of the fundamental process. Well, first of all, courts create our own rules. We don't need the legislature to do that. But second of all, I don't think that an official rule is required. But are you familiar with juvenile rule 13.1a? I am not familiar with that, no. It's my understanding that that rule prohibits parties and speculators from using electronic devices. So even assuming that you need an official rule, why isn't that enough? Well, Your Honor, I do not believe this was a juvenile court or a juvenile courtroom. I don't think that was the nature of the courtroom or the courthouse. It's my understanding that a custody, a child support order would be most likely juvenile. So that was one reason I asked you from the beginning whether you knew what type of court proceeding your client was there for. But that's not in the record. I didn't see it. No, my client, there was some discussion of whether or not he was there for a child support issue or if he was there for some sort of contempt issue. Contempt for what? Contempt for failing to face child support? I do not believe so. There was sort of an exchange in the deposition testimony where there was a question of whether or not he was there for child support and he stated on the record that he received a notice for contempt of something. It wasn't in something that I was familiar with legally. He contested his need to be there at the courthouse. He personally didn't think that he needed to be there, but he was intending and was operating his tablet at the time. The idea of going back to the main argument is that the fact that the order was not published in any manner that verified that it was actually a legal order, simply having a sign with references of the courthouse staff, I would believe would not be blameworthy. Okay, Mr. Johnson, you've saved three minutes for rebuttal. We'll hear from Mr. Saverin. Thank you. Yeah, that makes many of us. To answer the specific question, Judge Brant, this was a juvenile court. How do we know that from the record? It's in Ms. Deb Lewis' deposition. And I have written down here my note on Deb Lewis' deposition with the number on page 34. He testified that he was assigned to Judge Teske. I think I've pronounced that correctly. T-S-K-E, courtroom. And that he was a bailiff assigned at that particular courtroom. Your Honor, I think that this case, and I've encapsulated it, is about the ability of a bailiff to maintain order in a courtroom, and civil liability that may arise under the Fourth Amendment of the Constitution. We maintain, of course, that there was a probable cause to arrest Mr. Johnson for a number of reasons. I would point out that a pardon was signed. This was a bailiff in a courtroom. The bailiff asked you not to do something, and you don't do it unless it's something that you're categorically, you know, allowed to do. And if you want to contest it, there are means to contest that. You can go through some administrative procedure. You can ask the judge when the judge becomes more important, whether or not for some reason. I know there are times when I've been allowed to use a computer in the courtroom for a specific reason, but you've asked permission for that. And I also want to point out that this was not as though the officer, Deputy Lewis, went up to Mr. Johnson and said, turn off your tablet, and he didn't. And he immediately, in a melee, sued. He took it out of the hall and explained to him that this was the rule. There was, of course, a sign that shows that. They went back in. Mr. Johnson defied Deputy Lewis's direction. They went back out into the hall, talked to him about it again. Then the evidence was disputed. They went back into the courtroom. Mr. Johnson turned on his tablet, did not look at his tablet, but instead looked directly at the bailiff. At that point, the bailiff told him, Deputy Lewis told him that he was under arrest. At that point, Mr. Johnson attempted to resist arrest and then got into a physical altercation in the hallway to the point that Mr. Johnson got Deputy Lewis and headlocked, hugged him on a duty belt. It wasn't until then that Mr. Johnson escalated to the point that Deputy Lewis fired a weapon one time into his brain. In your view, for what was Mr. Johnson being arrested? He was charged with obstruction and then also the fact that some of those occurred during the altercation. And did that obstruction arise—was the initial arrest the cause of that obstruction rather than obstruction once the arrest began? Yes, it was obstruction for not following the court rules. There are a couple of things I want to point out. Mr. Johnson, the attorney, said here that science has to create law. Well, not really the purpose of where we are now, because the purpose of where we are now is whether there was arguable probable cause to support the arrest. The question is whether a reasonable officer could have believed that he had probable cause. I think the sign is icing on the cake. I think if the bailiff came up and said, don't chew gum here or something of that sort, he would likely have the authority to do that. He's charged with maintaining order, security, and conform. But particularly with the sign in the courthouse or at the court door that indicates that, I think that absolutely a reasonable officer could have believed he had probable cause to make sure that the rules were followed, even if it was not technically a law, as my adversary said. I think that the one error that the Dishonor Court made in saying that there was no arguable probable cause in the Dishonor Court's decision, particularly on page 24 of the order, is really just one sentence where he says that if defendants were not lawfully charged with official duties, they lacked arguable probable cause. I think he skips a step there by explaining no probable cause or arguable probable cause. And particularly when you look at the discussion of arguable probable cause, and if you look at the page before that, page 23, the Dishonor Court wrote that without some indication that the judge or judges provided or made prohibited tabloid use or that it was in fact sheriff's office policy, the court did not conclude that Lewis had the authority to order Johnson to stop using his tabloid. There's a step that skips there. It's that maybe they didn't have the lawful authority. I think they did. But the question is whether or not a reasonable officer could have believed, or if you follow some of the language in the Fourth Amendment use of force cases, it's whether every reasonable officer would have known that there was no probable cause. And I don't think that that stands to be met on these facts. A number of things I'd like to go over that are undisputed. As I said, there were repeated requests to Mr. Johnson to turn off the tabloid that went out into the hallway twice. There was abject defiance of the directive. At the time that the force was used, the deadly force was used, they had been wrestling a little bit. Mr. Johnson had not submitted at all. In fact, he escalated it by putting the deputy in a headlock and reaching for his duty belt. I don't think there's any question that the force was reasonable at that point. I would like to address one point that I think that since I have some time that the appellate raises in their brief, and I think it is a concern that needs to be addressed, and that is that under Georgia law, someone has a right to resist an unlawful arrest by using proportionate force. Of course, we can't say that there's no right to resist because of an unlawful arrest. Certainly, the question of the right to flee under Georgia law is the right not to be punished for resisting arrest if there was no probable cause for the original arrest. But it is not a ticket to escalate resistance to the point where the force used, let alone use your means of trying to flee in order to justify the escalating force that you used. And I would say that there's no case that I would say that I have found that allows a person who has resisted an unlawful arrest, if they had that fear, to then submit damages that they sustained in initiating the resistance in the flee. The cases that are cited, I would expect to be no arguable cause, are demonstrably distinguishable. In one case, a person did not obstruct. He was in a parking lot in the Perkins v. Thrasher case. During the count of weapons, he bopped it. That was not obstructed. In another one, the W.B.Y. case, which was the valet at an adult entertainment club, was detained, and when he had done anything but take one step back when he was confronted by the police. The Morenda case was cited by the district court. The officer arrested the person when he had used a foul word towards the officer while walking away. That did not constitute obstruction. Certainly, we would say that under the circumstances here, for all the reasons that we've stated, there was, at the very least, arguable probable cause to support this arrest, which then the rest of the claim is meritless as a result of that. But even without arguable probable cause, certainly the force was justified the way things were dealt. The last thing I want to mention, unless there are any questions, is that with respect to Deputy Goodson, there is no issues that have been raised with respect to his use of taser, which was the only involvement that he had in this entire case. So we would ask that the district court's judgment be affirmed. The reason that I'm stating today is that I would have it re-briefed. Thank you, Mr. Saverin. Mr. Johnson, you have three minutes. Thank you, Your Honors. In response to Kelly's arguments and to continue our previous discussion, the law enforcement officers need to have limits on their actions. If the sheriff's department put up the signs of which it appears happened, then arrest people for violating those signs. There's no check on what the sheriff's department does. There is no due process. If the sheriff's department is putting up rogue signs around the courthouse, can we assume that the judges will notice and instruct the sheriff to take those down? I think that that is an assumption, Your Honor, that could be made. But a pretty fair one, isn't it? I would think that if it is a fair assumption, it doesn't create the ability for a sheriff's deputy to then have a law court. Like, sheriff's deputies have an obligation to know the law just like every other citizen, and if they're going to arrest someone for obstruction of the law court, they need to have a law that backs that up. But there's no evidence here that the sheriff's office put up these signs for their own ends, right? We've got evidence that court rules said no electronics in the courtroom. I thought you had agreed, you had conceded, that at least with respect to some individual courtrooms, some of the judges did enforce the very rule that was posted on signs throughout the courthouse. Did I misunderstand that? I thought you had conceded that that was at least the case in some of these individual courtrooms in this courthouse. No? I've been in many, many courtrooms. I've been ordered to use or not use electronic devices in the past. I know the courts will issue those orders, and then if a deputy enforces that order, that would be enforcing a law order. I could see that being a structural error. What about the deputy's testimony here, though? One deputy said, this is the rule everywhere. The other one said, in some of the courtrooms, the judges enforce this rule. Yes, Your Honor. That is the testimony that's on the record here. And I believe that that is what... I mean, I think that creates a disputed issue. I think that ultimately it's also... Where's the evidence to get... Where's the dispute? Where's the evidence to the contrary? Your Honor, Deputy Goodson made a very good evidence on some of the individual judges on how that is enforced. Right, but that's the very best evidence for your side is that some judges vigorously enforce this rule, and others don't. Right? Your Honor, I believe that that is not the best evidence. The best evidence is that there was no order to a deputy to arrest him for having a tablet. Okay. I think we understand your case, Counsel. We'll be in recess for 10 minutes. Thank you.